UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. No. 05-10286-PBS

DOMENIC DIMODICA,

    PLAINTIFF,

vs.

ROBERT MURPHY, et al,

    DEFENDANTS.

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' SECOND MOTION TO EXTEND TIME

The plaintiff has no objection to giving the defendants as much time as they reasonably need to respond to the plaintiff's complaint, provided the defendants agree or the court orders the defendants to maintain the status quo, and do not make the plaintiff's conditions of confinement more restrictive than they were at the time that the plaintiff filed this action. The plaintiff requests that the defendants agree or the court order the defendants to refrain from double bunking the plaintiff or removing any of the defendant's furnishings from his room including his desk, his four drawer bureau, or his wardrobe, until further order of this court, as a condition of granting the defendants' motion.

    In support of this motion the plaintiff states that defendants have recently implemented a policy of removing all furniture from cells, and replacing the furniture with one small metal prison desk and two foot lockers, in which the inmates are supposed to fit all of their clothing and other possession. Attached is copy of the notice that has been posted on all of the units regarding these more restrictive room conditions. The defendant

2

Robert Murphy has stated that the reason for these more restritive room conditions is so that institution will meet the requirements of acreditation by the American Correctional Association as a correctional facility. See the attached affidavit of Joel Pentlarge, ¶¶ 10, 11, 12, 13, 14, and 15.

The defendants should not be allowed to make the plaintiff's conditions of confinement more restrictive, while at the same time delaying a hearing on the plaintiff's claim that the conditions are already more restrictive than they need to be. The plaintiff therefore respectfully requests that the court order the defendants to maintain the status quo regarding his room furnishings until further hearing on this issue.

Domenic DiModica, Plaintiff

*/s/ Domenic V. DiModica*
Domenic V. DiModica, Pro Se
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

Verification

I, Domenic DiModica, have read this Response. The facts about the furniture in my room and the plan to take it away from me are true to the best of my knowledge and belief.

June 30, 2005

*/s/ Domenic V. DiModica*
Domenic V. DiModica

Certificate of Service

I, Domenic V. DiModica state under the pains and penalties of perjury that I have served a copy of the foregoing Response on Attorney Mary Murray, by DOC mail.

July 1, 2005

*/s/ Domenic V. DiModica*
Domenic V. DiModica

# CELL DECORUM

1. ## DOUBLE BUNK CELLS

    . ALL 3 AND 4 DRAWER CABINETS REMOVED

    . ALL WARDROBES REMOVED

    . TWO FOOTLOCKERS ASSIGNED TO EACH RESIDENT

    . THREE FOOTLOCKERS TO BE KEPT UNDER BUNK

    . ONE FOOTLOCKER TO BE KEPT ON FLOOR UNDER TV STAND – FOOTLOCKER ASSIGNED TO BOTTOM BUNK

2. ## PROPERTY AMOUNTS MUST BE IN COMPLIANCE WITH DOC POLICY

    . EXCESS POLICY TO BE SENT HOME OR DISPOSED OF

    . ONE BAG FOR DISPOSED ITEMS WITH DISPOSAL FORM AND ONE BAG FOR PROPERTY TO BE SENT HOME WITH PROPERTY REQUEST FORM.  PROPERTY OFFICER WILL PICK UP ALL BAGS DAILY AT 2:00 PM

3. ## PROPERTY IN FOOTLOCKERS

    . ALL CLOTHING EXCEPT BATHROBE, TOWEL, COAT

    . ALL CANTEEN ITEMS EXCEPT ON COSMETIC/DESK SHELF

    . ALL LEGAL & PERSONAL PAPERS ONE CUBIC FOOT EACH
    . ALL BOOKS AND MAGAZINES

    . WALKMAN, HEADPHONE EXTENSIONS AND HEADPHONES WHEN NOT IN USE.

UNITED STATES DISTRICT COURT
FOR THE
DISRTICT OF MASSACHUSETTS

C.A. No. 05-10286-PBS

DOMENIC V. DIMODICA

    Plaintiff,

vs.

ROBERT MURPHY, et al.,

    Defendants.

AFFIDAVIT OF JOEL PENTLARGE
REGARDING IMPOSITION OF MORE RESTRICTIVE CELL CONDITIONS

I, Joel Pentlarge, state under the pains and penalties of perjury that:

1. My name is Joel Pentlarge. I am currently incarcerated at the Nemansket Correctional Center, also known as the Massachusetts Treatment Center, 30 Administration Road, Bridgewater, MA, 02324, for a day to life, as provided by M.G.L. c. 123A.

2. Prior to being committed, I served a 3 to 4 year sentence at the Mass. Correctional Institution at Concord and the Mass. Correctional Institution at Norfolk. I completed this sentence and I am not currently subject to any criminal sentence.

3. At the time I completed my criminal sentence in December 2003, at the Mass. Correction Institution at Norfolk, I had single cell with 19 cubic feet of storage space for my clothing and other personal possessions.

4. When I first arrived at Nemansket Correctional Center on December 24, 2003, I was placed in a double bunked cell with one foot locker with $2\frac{1}{2}$ to 3 cubic feet of storage space for all of my possessions.

5. When judgment entered committing to Nemansket Correctional

2

6. When judgment entered committing me to the Nemansket Correctional Center, I was moved to a single cell for a week or two. This cell was furnished with single bunk, a wooden (particle board) desk with four drawers, a four drawer bureau, and a large wardrobe with shelves and space to hang clothes.

The four drawer bureau was 20" deep, 18" wide and 44" high, giving it a gross space of 9.2 cubic feet.

The wardrobe was 18" deep, 44" wide and 67" high, giving it a gross space of 30.7 cubic feet.

The desk was 2 feet deep by $3\frac{1}{2}$ feet wide giving it 7 square feet of desk top. The drawers in the desk provided an additional 4 cubic feet of storage.

All of these furnishing taken together provided 43.9 cubic feet of storage for each prisoner.

7. From talking to prisoners who have been incarcerated here from at least 1986, when the Nemansket Correctional Center opened as a brand new facility it is my understanding that the furnishings described in the preceding paragraph were the "orignal equipment" that all cells were furnished with when the facility opened.

8. The furnishings described in paragraph 5 above are consistent with the description given by Judge Mazzone, as "well lit and nicely furnished." Langton v. Johnston, 928 F.2d 1206, 1212-1213 (1st Cir. 1991).

9. Since about a month after I was committed in July 2004, the wooden furniture has been removed from each cell which I have occupied and been replaced with a small metal desk, and

3

two metal foot lockers per prisoner.

My current foot lockers measure 30" wide, 15" deep, and 12" inches high giving them a total gross space of 3.125 cubic feet each.

The metal desk is $1\frac{1}{4}$ feet deep by 3 feet wide, giving it 3.75 square feet of desk top. It has two built in cubicles with a total of 1.25 cubic feet of space to be shared by two prisoners.

The total amount of storage space which I am now allowed is 6.78 cubic feet.

10. On or about March 17, 2005 I spoke to Superintendent Murphy at "access hour," and I asked him why he was replacing the wooden (particle board) desk in my cell with a much smaller desk, he told me that the institution was getting rid of all of the wooden furniture due the fire hazard. When I asked him why he chose a much smaller metal desk, instead of replacing the wooden desk with a metal desk of comparable size, Superintendent Murphy answered that it was a choice that he made.

11. On Tuesday, June 21, 2005, Captain Rull and Captain Smith came to Unit C-1, where I am currently celled. They announced that all wooden furniture would be removed from all double bunked cells starting that morning with the four drawer bureaus. Captain Rull explained that this was being done to meet accreditation standards for an audit which will be conducted this fall. He also stated that any remaining wooden desks would be replaced with metal desks. Each inmate would given two foot lockers into which all of his clothing and possessions must stored with three of the foot lockers stored under the bed and one foot locker allowed against the wall under the television stand.

4

12. Later the same day the attached memorandum on "Cell Decorum" was posted on my unit.

13. On June 21, 2005 I spoke to Superintendent Murphy, and asked him if the cell decorum policy was being implemented so that the institution could get ACA (American Correctional Association) accreditation as a correctional institution. He said yes.

14. On June 24, 2005 at lunch time I spoke with Steven Fairley, the Director of Security for the Nemansket Correctional Center. He confirmed that the administration's current plan is to remove all of the wooden furniture in the cells, and to replace it with a metal desk for each cell, and two metal footlockers for each inmate. He emphasized that inmates are expected to have only the property allowed under the DOC regulations, i.e. ten pairs of socks, five pair of pants, etc. See 103 CMR 403.00 the DOC property policy. This property is expected to fit in the two footlockers.

Signed under the pains and penalties of perjury, this 24th day of June, 2005

Joel Pentlarge